**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRIAN LEE PARKER,
          *Petitioner-Appellant,*

                    v.

LARRY SMALL, Warden; EDMUND G.
BROWN, JR., Attorney General of
the State of California,
          *Respondents-Appellees.*

No. 10-17128

D.C. No.
3:09-cv-03989-
WHA (PR)

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted
October 11, 2011—San Francisco, California

Filed December 27, 2011

Before: J. Clifford Wallace and Sidney R. Thomas,
Circuit Judges, and William H. Albritton, III,
Senior District Judge.*

Per Curiam Opinion;
Concurrence by Judge Thomas

---

*The Honorable William H. Albritton, III, Senior District Judge for the
U.S. District Court for Middle Alabama, sitting by designation.

21215

## COUNSEL

Bradley S. Sandler, Law Office of Bradley S. Sandler, Beverly Hills, California for the petitioner-appellant.

David M. Baskind, Deputy Attorney General, San Francisco, California for the respondent-appellee.

## OPINION

PER CURIAM:

The right of an accused to have his case heard before a jury of his peers is a hallmark of our criminal justice system. The jury's verdict is of paramount importance in concluding the accused's case. Accordingly, the Supreme Court has permitted trial judges to give extra instructions to deadlocked juries in the hope of encouraging, but not coercing, a jury verdict. *See Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896); *Lowenfield v. Phelps*, 484 U.S. 231, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988); *Early v. Packer*, 537 U.S. 3, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam). This case reaches us on a Certificate of Appealability granted by the United States District Court for the Northern District of California on the issue of whether the California Court of Appeal acted contrary to clearly established federal law as determined by the Supreme Court of the United States when it held that the supplemental jury charge given at petitioner's trial was not coercive.

The petitioner, Brian Lee Parker, was convicted in the Superior Court of San Mateo County, California, of murder and other aggravating enhancements. Parker received a sentence of life without parole for the murder conviction and a sentence of 37 years to run consecutive to the life sentence for the enhancements. Parker appealed his conviction to the California Court of Appeal on the ground that the trial judge's supplemental instructions to the deadlocked jury were coercive. The Court of Appeal rejected this argument and affirmed the trial judge, and the California Supreme Court denied review. Parker then filed a habeas petition in the United States

District Court for the Northern District of California pursuant to 28 U.S.C. § 2254.

The district court denied the writ of habeas corpus. It did, however, grant a certificate of appealability on Parker's claim that the trial judge's supplemental jury charge was coercive. We agree with the district court, and we affirm the denial of the writ of habeas corpus.

This decision requires us to reiterate this Court's role under the Antiterrorism and Effective Death Penalty Act ("AEDPA") habeas framework, 28 U.S.C. § 2254(d). We sit here not as a supervisor of state courts, but as enforcer of the federal AEDPA's reasonableness standard. Accordingly, we hold, not that we approve of the instruction given by the California trial court, or even necessarily that we would have made the same decision as the California Court of Appeal, if sitting in its place, but that the California Court of Appeal's decision meets the federal review standard set forth by the AEDPA.

## BACKGROUND

At the close of Parker's six weeks trial, the jury was instructed on the law and on its role, and began deliberating. The following rendition of the jury's deliberation is drawn from the California Court of Appeal's decision:

> On the third day of deliberations, the jury sent a note to the court stating, "We can't come to a decision." The court inquired as to whether the jury had agreed to any of the counts, to which the jury responded, "no." The court returned a note to the jury which read, "Given the complexity and length of this trial- I believe that you should continue your deliberations to see if progress can be made in reaching a decision." Later that day, the jury sent the court another note, which read, "Regretfully, we all agree that we

will not be able to come to a unanimous decision."
The court responded, "It does not appear that you
have had time to fully and frankly consider the evi-
dence with open minds and fully and frankly interact
with each other to try and reach verdicts. [¶ ] This is
the process in which you are required by law to
engage. If there is something further that the court
can do to assist you, please advise me. Otherwise,
please continue your deliberations." Still later the
same day, the jury requested and received further
instructions on the definition of "reasonable doubt."
Then the jury sent another note to the court indicat-
ing that it was still deadlocked. The court recessed
for the evening and asked the jury to reflect on the
case that evening and to return the following morn-
ing. The jury resumed deliberations the following
day, but again sent the court a note indicating that it
remained deadlocked. The note explained, "We have
one juror who says that because he believes all the
prosecution witnesses lied, he cannot find the defen-
dant guilty-ever. He is unwilling to examine other
evidence. He is wed to the statement the prosecuting
attorney made in closing, 'If you believe the prose-
cution witnesses, you must find the defendant
guilty.' He is unable, even though we have asked
many times, to explain to us how the evidence leads
to a not guilty verdict. We are deadlocked."

In response to this note, the court instructed the jury
verbatim from an instruction upheld in *People v.
Moore* (2002) 96 Cal.App.4th 1105, 1121:

"'What I am going to do right now, ladies and gen-
tlemen, is I have further instructions and directions
to give you. It has been my experience on more than
one occasion that a jury which initially reported it
was unable to reach a verdict was ultimately able to
arrive at verdicts on one or more of the counts before

it. To assist you in your further deliberations, I'm going to further instruct you as follows:

'Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so based solely on the evidence presented and without regard for the consequences of your verdict regardless of how long it takes to do so.

'It is your duty as jurors to carefully consider, weigh and evaluate all of the evidence presented at the trial, to discuss your views regarding the evidence, and to listen to and consider the views of your fellow jurors.

'In the course of your further deliberations, you should not hesitate to re-examine your own views or to request your fellow jurors to re-examine theirs. You should not hesitate to change a view you once held if you are convinced it is wrong or to suggest other jurors change their views if you are convinced they are wrong.

'Fair and effective jury deliberations require a frank and forthright exchange of views.

'As I previously instructed you, each of you must decide the case for yourself, and you should do so only after a full and complete consideration of all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of arriving at a verdict on the charge if you can do so without violence to your individual judgment.

'Both the People and the defendant are entitled to the individual judgment of each juror.

'As I previously instructed you, you have the absolute discretion to conduct your deliberations in any

way you deem appropriate. May I suggest that since you have not been able to arrive at a verdict using the methods that you have chosen, that you consider to change the methods you have been following, at least temporarily and try new methods.

'For example, you may wish to consider having different jurors lead the discussions for a period of time, or you may wish to experiment with reverse role playing by having those on one side of an issue present and argue the other side's position and vice versa. This might enable you to better understand the other's positions.

'By suggesting you should consider changes in your methods of deliberations, I want to stress I am not dictating or instructing you as to how to conduct your deliberations. I merely find you may find it productive to do whatever is necessary to ensure each juror has a full and fair opportunity to express his or her views and consider and understand the views of the other jurors.

'I also suggest you reread CALJIC instruction 1.00 on page 1 and 1-A, CALJIC instruction 17.40 on page 40, and CALJIC instruction 17.41 on page 41. These instructions pertain to your duties as jurors and make recommendations on how you should deliberate.

'The integrity of a trial requires that jurors at all times during their deliberations conduct themselves as required by the instructions. CALJIC instruction 1.00 defines the duties of a juror.

'The decision the jury renders must be based on the fact[s] and the law. You must determine what facts have been proved from the evidence received in the

trial and not from any other source. A fact is some-thing proved by the evidence or by stipulation.

'Second, you must apply the law I state to you to the facts as you determine them and in this way, arrive at your verdict.

'You must accept and follow the law as I state it to you regardless of whether you agree with the law. If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflict[s] with my instructions on the law, you must follow my instructions.

'CALJIC 17.40 defines the jury's duty to deliberate. The decisions you make in this case must be based on the evidence received in the trial and the instruc-tions given by the Court. These are the matters this instruction requires you to discuss for the purpose of reaching a verdict.

'CALJIC 17.41 is an instruction which recommends how jurors should approach their task.

'You should keep in mind the recommendations this instruction suggests when considering the additional instructions, comments and suggestions I have made in the instructions now presented to you. I hope my comments and suggestions may have some assis-tance to you.

'You're ordered to continue your deliberations at this time. If you have other questions, concerns, requests or any communications you desire to report to me, please put those in writing on the form my bailiff has provided you with. Have them signed and dated by your foreperson and then please notify the bailiff.' "

> Later that day the jury requested a copy of this instruction and the next morning it reached a verdict. The jury also sent a note to the trial judge which read, "Thank you for having us continue to deliberate."

*People v. Parker*, 2008 WL 1952341, \*5-7 (Cal. Ct. App. May 06, 2008).

## *ANALYSIS*

### I.   Standard of Review

We review the district court's denial of Parker's habeas petition de novo. *Yee v. Duncan*, 463 F.3d 893, 897 (9th Cir. 2006). Parker's claim was adjudicated on the merits by the California Court of Appeal. Therefore, under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we may not grant his application "unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Clearly established federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). In other words, our inquiry is whether the California Court of Appeal reasonably applied the governing legal principles set forth by the Supreme Court when it determined that the supplemental instruction was not coercive.

### II.   The California Court of Appeal's Decision

**[1]** Clearly established federal law provides that "[a]ny criminal defendant . . . being tried by a jury is entitled to the

uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). A supplemental jury charge to encourage a deadlocked jury to try to reach a verdict is not coercive per se. *Allen v. United States*, 164 U.S. 492 (1896) (approving the "*Allen* charge"); *Lowenfield*, *supra*, 484 U.S. at 237 ("The continuing validity of this Court's observations in *Allen* are beyond dispute . . ."). However, when faced with a claim of jury coercion, a reviewing court must "consider the supplemental charge given by the trial court 'in its context and under all the circumstances.' " *Lowenfield*, *supra*, 484 U.S. at 237 (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam)).

In *Lowenfield*, the trial judge polled the individual jurors to learn what each juror thought about his or her ability to reach a sentencing recommendation in a capital case if given more time to deliberate. 484 U.S. at 234-35, 108 S. Ct. 546. Only one juror felt that further deliberation was unnecessary. After learning that fact, the judge reminded the jury that in the absence of a unanimous jury recommendation, the court would impose a sentence of "Life Imprisonment without benefit of Probation, Parole, or Suspension of Sentence." *Id.*, 108 S. Ct. 546. Thirty minutes later, the jury returned with a verdict sentencing the defendant to death. *Id.*, 108 S. Ct. 546.

**[2]** In upholding the denial of the habeas writ, the Supreme Court found that the *Lowenfield* instruction was less coercive than the *Allen* instruction because the judge did not specifically urge the minority jurors to consider the majority's view or the reasonableness of their own view during the supplemental charge. *Id.* at 237-38, 108 S. Ct. 546. The Supreme Court was similarly unpersuaded by the fact that the trial judge knew the identity of the single juror who disfavored continued deliberation because the trial judge did not know how that individual felt about the merits of the case—which the Court determined to be "clearly separate" inquiries. *Id.* at 240, 108 S. Ct. 546. While the Court noted that a short time lapse between the presentation of supplemental charges and

the jury's return with a verdict suggests coercion, that fact is just one part of the totality of the circumstances analysis the Supreme Court requires for determining the presence of jury coercion. *Id.*, 108 S. Ct. 546. Ultimately, the *Lowenfield* Court found that the supplemental charge, even in the context of the judge's knowledge about each juror's desire to continue deliberating and the short time lapse between instruction and verdict, was not coercive. Adhering to the *Lowenfield* Court's guidance, we ask (1) if the California Court of Appeal looked at the totality of the circumstances in determining whether the instruction given at Parker's trial was coercive and (2) if its determination that it was not was objectively reasonable.

**[3]** It is clear from the record that the California Court of Appeal considered the *Moore* instruction and its potentially coercive effect in context and under all the circumstances. The California Court of Appeal began by finding that the *Moore* instruction had been previously upheld and endorsed in California. Then the Court considered a line of this Circuit's precedent[1] for determining whether the trial judge's knowledge of a single holdout made the *Moore* instruction coercive. After looking at this Circuit's precedent, the instruction given at trial, and the circumstances surrounding the presentation of the instruction, the California Court of Appeal concluded that the supplemental charge did not coerce the jury.

**[4]** As long as the California Court of Appeal reviewed all the facts, and considered the supplemental charge in its context and under all the circumstances in holding that it was not coercive, then, in the absence of Supreme Court authority to the contrary, this Court must give deference to the California Court of Appeal's judgment. *See Woodford v. Visciotti*, 537

---

[1]Although the California Court of Appeal did not cite any Supreme Court authority in its decision, we ask only whether it reasonably applied the principles contained in relevant Supreme Court precedent. *See Early v. Packer*, *supra*, 537 U.S. at 8, 123 S. Ct. 362.

U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (noting that the 28 U.S.C. § 2254(d) is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (citations and internal quotations omitted) (per curiam). We offer no opinion as to whether we would have reached the same result had we been reviewing this case directly. We hold only that the California Court of Appeal's decision is not contrary to, and does not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

### III. *Smith v. Curry* Distinguished

We also find it appropriate to distinguish the present case from *Smith v. Curry*, 580 F.3d 1071(9th Cir. 2009), *cert. denied*, ___ U.S. ___, 131 S. Ct. 10, 178 L. Ed. 2d 403 (2010), a case decided by this Circuit with facts somewhat similar to the present case. In *Smith*, a divided panel affirmed the district court's grant of habeas relief, holding that a California Court of Appeal decision upholding a trial judge's actions was an objectively unreasonable application of governing legal principles set forth in *Lowenfield*. *Smith* is clearly distinguishable from this case.

In the *Smith* case, as here, the trial judge knew both the division of the jurors and the reason for a single holdout juror's reluctance to convict. 580 F.3d at 1082. The *Smith* trial judge, however, went beyond an *Allen* charge to revisit select pieces of evidence from the trial, and to explain that evidence in a way highly favorable to the prosecution. *Id.* The judge did this with knowledge that the evidence he was highlighting directly responded to the holdout juror's concerns. In fact, he replayed for the jury certain interrogations that would support a conviction, and, without being asked to do so, sent transcripts of those interrogations back to the jury room. *Id.* The panel majority said this recasting of evidence by the judge essentially "substituted the judge for the jury as to the manner

and substance of deliberations and thereby denied [the defendant] his constitutional right to the uncoerced verdict of the jury." *Id.* at 1084. Lastly, it took the jury less than one hour to return with a guilty verdict after being given these supplemental instructions by the trial judge. *Id.* at 1083-84.

Given all of these facts, *Smith* found that the California Court of Appeal's decision that the judge's presentation of the evidence was "scrupulously fair," was objectively unreasonable, and accordingly, so too was the Court of Appeal's decision regarding the lack of jury coercion. *Id.* at 1084. *Smith* concluded that "[a]bsent these factors, we might reach a different conclusion. With them, the case represents the most coercive instruction of any in the coercion cases we have reviewed." *Id.*

The judge in Parker's trial did not go nearly as far to encourage the jury to reach a verdict as the trial judge did in *Smith*. Several of the factors that led this court to grant the writ in *Smith* are absent from this case. For example, while it is true that Parker's trial judge knew the jurors were split, that one juror was in favor of acquittal, and that that one juror was concerned about the believability of the prosecution's witnesses, the judge did not, as did the trial judge in *Smith*, directly address that holdout juror's concerns during the supplemental instruction or attempt to recast the evidence in a light more favorable to the prosecution. Whether or not the California Court of Appeal was correct to conclude that there was no coercion here, its decision did not involve an objectively unreasonable application of the governing principles set forth in *Lowenfield*.

## *CONCLUSION*

The facial validity of the *Moore* instruction is not at issue. Parker contends that the California Court of Appeal's decision was an objectively unreasonable application of clearly established federal law as determined by the Supreme Court. For

the aforementioned reasons, we hold that it was not. Accordingly, the district court's denial of Parker's petition for habeas corpus is

**AFFIRMED**.

THOMAS, Circuit Judge, concurring:

Under the circumstances presented by this case, I join my colleagues in affirming the district court's denial of Parker's petition for habeas corpus. I write separately only to emphasize that the supplemental jury instruction issued in this case could have an unconstitutionally coercive effect in other contexts, even under the deferential standard of review imposed by AEDPA. Federal habeas review of the *Moore* instruction in future cases, as in this one, will rest on evaluation of the instruction "in its context and under all the circumstances." *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988) (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curium)) (internal quotation marks omitted).