**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BENJAMIN FLOURNOY, Jr.,
        *Petitioner-Appellant,*

v.

LARRY SMALL, Warden; EDMUND G.
BROWN, Jr., Attorney General;
MATHEW CATE, Secretary CDCR,
        *Respondents-Appellees.*

No. 11-55015

D.C. No.
3:08-cv-02298-
IEG-POR

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Chief District Judge, Presiding

Argued and Submitted
March 7, 2012—Pasadena, California

Filed May 30, 2012

Before: Jerome Farris, Richard R. Clifton, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Clifton

5987

## COUNSEL

Mark D. Eibert, Half Moon Bay, California, for the petitioner-appellant.

Steve Oetting (argued), Kamala Harris, Dane R. Gillette, Gary W. Schons, Kevin Vienna, Office of the Attorney General, San Diego, California, for the respondents-appellees.

## OPINION

CLIFTON, Circuit Judge:

Benjamin Flournoy was convicted in a California court of one count of forcible rape and one count of assault with intent to commit rape. He appeals from the district court's denial of his petition for a writ of habeas corpus. Flournoy alleges two violations of his constitutional rights.

First, he contends that the trial court permitted a forensic analyst to testify based on the results of scientific tests performed and reports prepared by other analysts in violation of his Sixth Amendment Confrontation Clause right. This claim fails because there was no clearly established federal law, based on decisions of the United States Supreme Court, that held such testimony to violate the Confrontation Clause in cir-

cumstances where the testifying witness participated in and reviewed the crime lab's work, even though she did not personally conduct all the testing herself.

Second, Flournoy alleges that he received ineffective assistance from his trial counsel, also in violation of the Sixth Amendment, due to the attorney's failure to make an objection based on the Confrontation Clause to the analyst's testimony. We conclude that the failure to object did not represent deficient performance by counsel and did not prejudice Flournoy.

We affirm the district court's denial of habeas relief.

## I.  Background

Benjamin Flournoy was accused of raping L.M., an acquaintance, when she spent the night at his apartment on October 30, 2003. She visited a hospital the next day and reported being raped. She was then transferred to another hospital, where the police took her clothes, she changed into a hospital gown and new underwear, and a nurse performed a sexual assault exam. L.M. did not consent to, so the nurse did not perform, an internal examination with a speculum.

After initially stating she had been raped by a stranger, a couple of months later L.M. told the police that she had lied about the circumstances of her rape and that she had actually been raped by Flournoy. L.M. positively identified Flournoy out of a six-man photo line-up and described possessions she had seen in his apartment. When the police subsequently visited Flournoy, he denied knowing L.M. and voluntarily provided a DNA sample.

Flournoy was charged with one count of forcible rape and one count of assault with intent to commit rape. At trial, the examining nurse testified that L.M. had displayed external genital abrasions consistent with a friction injury from a penis

coming into contact with the vaginal area. The nurse could not determine whether the sexual contact was consensual or nonconsensual.

Forensic analysts in the San Diego Police Department's crime laboratory analyzed the samples taken from L.M. and Flournoy. Several different lab employees worked on the case, only one of whom, Amy Rogala, testified at Flournoy's trial. Rogala testified that she had recovered male DNA from swabs of L.M.'s breasts and that a state database identified Flournoy's DNA as a potential match.

In addition to relating information from tests she had performed herself, Rogala testified as an expert based on the work and conclusions of another analyst, Adam Dutra, who was out of state and unavailable to testify. As part of the San Diego crime laboratory protocol, Rogala performed a technical review of all of Dutra's work for that month. After reviewing Dutra's reports, Rogala stated that she was satisfied Dutra had followed all proper protocols and procedures for the testing and calculations. She then testified that the sample from L.M.'s breast and the sample voluntarily provided by Flournoy matched at every tested marker location. Flournoy's counsel did not object to this testimony, and the portion of the report demonstrating the marker matches was introduced into evidence, also without objection.

Flournoy's attorney objected on hearsay grounds when Rogala was asked about the likelihood of such a match with a random person in the population. The answer required Rogala to read Dutra's report, and counsel argued that the business records exception had not been established. Neither counsel nor the trial judge mentioned the Confrontation Clause.

The trial court classified the statement as hearsay, saying it was "being offered for its truth as a conclusion of this other person's work." However, the court concluded that, as long as

the State laid the proper foundation, the statement would be admissible under California's public records exception to the hearsay rule. The prosecutor proceeded to lay the necessary foundation and the court admitted Rogala's testimony. Rogala explained that all analysts in the lab used the same computer program for population frequency calculations, and the program indicated the likelihood that a randomly selected African-American male would match all the same DNA markers as those present in L.M.'s breast swab was 1 in 41 quintillion.

Rogala also testified based on Dutra's test of additional DNA recovered from an external genital swab. Though the small sample size limited the methods available for DNA profiling, Dutra had conducted a less sensitive test involving only the Y chromosome. This too resulted in a positive match with Flournoy. Reviewing Dutra's report on the stand, Rogala stated that the Y chromosome profile of the external genital swab sample matched only one Y chromosome profile in the 1,100 African-American Y chromosome profiles contained in the database maintained by the lab.

Finally, Rogala also testified that Dutra had noted two sperm from the underwear L.M. changed into after the police took her original clothes. Approximately 100 sperm are required for DNA testing, so no such testing was done on the sperm.

Flournoy presented evidence that L.M. had removed all of her clothes except her bra and underwear before getting into bed with Flournoy the night of the rape, though there was a sofa where she could have slept instead. A forensic nurse also testified based on the reports of L.M.'s examination that the abrasions L.M. suffered were consistent with consensual intercourse. Defense counsel argued that Flournoy reasonably believed L.M. had consented to intercourse. He did not argue that Flournoy had not had sexual contact with L.M.

Flournoy was found guilty by the jury on both counts and was sentenced to twenty-five years to life, plus five additional years for each of three serious prior felonies for which he had been convicted. The California Court of Appeal denied his direct appeal in an unpublished decision. *People v. Flournoy*, No. D048597, 2007 WL 1830806 (Cal. Ct. App. June 27, 2007). In relevant part, the court concluded that Rogala's testimony regarding population frequencies was appropriate as expert testimony, even though the opinion was based on the calculations or tests of others. *Id.* at *7-8. Likewise, Dutra's DNA report was properly admitted under California's business records exception to the hearsay rule, and Rogala's testimony reported direct observations recorded in that report. *Id.* at *8-9. The court held that Flournoy had waived any Confrontation Clause argument by failing to object on Confrontation Clause grounds at trial. *Id.* at *9. Alternatively, the court held that the claim would not succeed on the merits, because Rogala testified as an expert, and the underlying reports were business records, not testimonial hearsay. *Id.* at *9-10.

Flournoy's petitions to the California Supreme Court for review and for a writ of habeas corpus were denied in 2007 and 2008, respectively. A petition to the United States Supreme Court for a writ of certiorari was also denied.

Flournoy filed a petition for a writ of habeas corpus in federal district court. He raised five claims, including the claims that are the subject of this appeal. The district court denied the petition. *Flournoy v. Small*, No. 08cv2298-IEG(POR), 2010 WL 5021196 (S.D. Cal. Dec. 3, 2010). It issued a certificate of appealability, under 28 U.S.C. § 2253(c), on two claims: the Confrontation Clause claim and the claim of ineffective assistance of counsel based on the failure to object properly to Rogala's testimony. *Id.* at *9. The court denied a certificate of appealability on a separate claim of ineffective assistance, based on the trial attorney's failure to call an expert witness to dispute the San Diego police crime lab reports.

## II.  Standard of Review

We review de novo a district court's decision to deny a petition for a writ of habeas corpus. *Parker v. Small*, 665 F.3d 1143, 1147 (9th Cir. 2011).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs federal habeas review of state court decisions on the merits. 28 U.S.C. § 2254. It sets a high bar. Under AEDPA, a federal court may grant habeas to a petitioner convicted in state court only if the state court's decision on the merits (1) was contrary to or an unreasonable application of clearly established federal law, or (2) was based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786-87 (2011). For the purposes of AEDPA review, clearly established federal law is determined by Supreme Court holdings at the time the state court decision became final. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Greene v. Fisher*, ___ U.S. ___, 132 S. Ct. 38, 43-44 (2011).

## III.  Confrontation Clause

**[1]** The California court's decision that the admission of Rogala's testimony based on the tests and reports of other crime lab employees did not violate the Confrontation Clause was not contrary to or an unreasonable application of clearly established federal law.[1] The Supreme Court's decision in

---

[1]The district court held that Flournoy's Confrontation Clause claim was procedurally defaulted because the California Court of Appeal deemed any challenge waived under the state's contemporaneous objection rule. It then proceeded to discuss the merits, as the California Court of Appeal

*Crawford v. Washington*, 541 U.S. 36 (2004), had, by 2008, established that testimonial out of court statements were barred under the Confrontation Clause unless the witness was unavailable and the defendant had a prior opportunity to cross-examine the witness. *Id.* at 59. That decision did not, however, delineate precisely what statements qualify as "testimonial," nor did it place testimony like Rogala's in that category. *Id.* at 51-52.

The nature of Rogala's testimony differed substantially from the testimony examined in *Crawford*. Although Rogala had not performed the crime lab's analysis by herself, she had participated personally in the work that was done. She was qualified and testified as an expert, forming her opinions primarily based on reports she had peer reviewed and which were admissible as business records under the California Evidence Code. It was not unreasonable for the state court to determine that the testimony in question was admissible after *Crawford*. *See Meras v. Sisto*, ___ F. 3d ___, No. 09-15399, 2012 WL 1382857, at *3-4 (9th Cir. Apr. 23, 2012) (holding that *Crawford* did not clearly establish forensic lab reports are testimonial).

**[2]** The Supreme Court subsequently held, in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 125 S. Ct. 2527, 2532 (2009), that a forensic laboratory report ranked as testimonial for purposes of the Confrontation Clause, but that was after the state court's denial of Flournoy's claim. Moreover, *Melendez-Diaz* held only that a lab report could not be admit-

---

had done. While we ordinarily resolve the issue of procedural bar prior to any consideration of the merits on habeas review, we are not required to do so when a petition clearly fails on the merits. *See Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[A]ppeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar.").

ted without a witness appearing to testify in person. *Id.* Rogala appeared in person to testify at Flournoy's trial.

Even today there does not appear to be clearly established federal law that would make the admission of Rogala's testimony unreasonable under the standard set under AEDPA. Justice Sotomayor's concurring opinion in a case decided last year, *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S. Ct. 2705 (2011), reinforces our conclusion that *Crawford* did not clearly establish a Confrontation Clause violation on these facts. Justice Sotomayor provided the decisive fifth vote for the majority in *Bullcoming*. In her separate opinion, she specifically identified Confrontation Clause questions that in her view remained unanswered by the Court's holdings in that 2011 case, let alone by *Crawford*. These unresolved areas included the treatment of experts testifying to their opinions based on reports not admitted into evidence, as well as the degree of proximity the testifying witness must have to the scientific test. *See id.* at 2722 ("We would face a different question if asked to determine the constitutionality of allowing an expert witness to discuss others' testimonial statements if the testimonial statements were not themselves admitted as evidence."); *id.* ("[T]his is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue. . . . We need not address what degree of involvement is sufficient . . . ."). Both of these open issues were relevant to Flournoy's case. If those areas remained unsolved as of 2011, it is impossible to conclude that the California court's conclusions in this case were contrary to clearly established federal law at the time.

## IV.  Ineffective Assistance of Counsel

At trial, Flournoy's attorney objected to parts of Rogala's testimony as hearsay but did not state an objection based on the Confrontation Clause. Flournoy now argues that the fail-

ure to object on Confrontation Clause grounds represented ineffective assistance of counsel.

To establish ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance prejudices a defendant if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. To be eligible for federal habeas relief under AEDPA, a defendant claiming ineffective assistance of counsel must demonstrate that "the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 131 S. Ct. at 785. Flournoy has not met this standard.

**[3]** First, given the state of California and United States Supreme Court Confrontation Clause jurisprudence at the time, there was not a reasonable probability that a Confrontation Clause objection would have been sustained by the trial court or overturned on state court appeal. California law weighed in favor of admitting the testimony and sustaining that admission on appeal. *See People v. Geier*, 161 P.3d 104, 140 (Cal. 2007) (holding that a "DNA report was not testimonial for the purposes of *Crawford*"). The state court of appeal explicitly rejected the argument that admission of Rogala's testimony violated his rights under the Confrontation Clause. And, as discussed above, *Crawford* did not dictate a conclusion that Flournoy's Confrontation Clause rights were violated. The failure to make an objection that would have been overruled was not deficient performance.

**[4]** Second, even if the objection had been sustained by the trial court, there was not a reasonable probability that the result of the trial would have been different. Flournoy's defense was based on the argument that the sexual activity

with L.M. was consensual or that Flournoy reasonably believed that it was consensual. The identification of Flournoy as the person who had sexual contact with L.M. — the point made by the DNA identification evidence — was not disputed at trial. Flournoy argues that, had the evidence in question been excluded, his counsel might have pursued a defense based on lack of sexual penetration, rather than belief of consent. This argument is unpersuasive. Even the record with the contested evidence left room for a lack of penetration defense, which counsel chose not to make. A lack of penetration defense would not have been particularly strengthened if Rogala's testimony regarding the sperm Dutra found had been excluded. Counsel's decision to focus the defense on consent was a strategic choice that Flournoy did not directly challenge and that we cannot second-guess here.

In addition to the issues covered by the certificate of appealability, Flournoy also raises an uncertified claim of ineffective assistance based on the failure of his trial counsel to offer evidence from a defense expert, Dr. Slaughter, to respond to the crime lab reports and testimony. We decline to issue a certificate of appealability regarding that issue. Not calling Dr. Slaughter was a trial tactic — defense counsel focused on consent, not penetration or identity — so Flournoy cannot demonstrate deficient performance by counsel.

   **AFFIRMED.**