**REVISED July 30, 2015**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-70011

United States Court of Appeals
Fifth Circuit

**FILED**
July 29, 2015

Lyle W. Cayce
Clerk

CLINTON LEE YOUNG,

        Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

        Respondent – Appellee

Appeals from the United States District Court
for the Western District of Texas

Before JOLLY, SMITH, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge.

Petitioner-Appellant Clinton Lee Young ("Young") was convicted of two murders and sentenced to death. Young's death sentence became final on April 3, 2006, when the Supreme Court denied his petition for a writ of certiorari. Young's habeas petitions, however, continue to be litigated. Now before this court are Young's requests for certificates of appealability ("COAs") on his "*Brady/Napue*," ineffective assistance of counsel ("IAC"), and cumulative error claims, as well as his appeal of the district court's denial of his motion to stay and to supplement the record. For the reasons that follow, Young's motion for

No. 14-70011

COAs is DENIED. The district court's ruling on his stay and motion to supplement is AFFIRMED.

I.

Young was convicted of capital murder on March 26, 2003, for killing Samuel Petrey and Doyle Douglas in November 2001. He was sentenced to death on April 14, 2003. A brief summary of his crimes follows. On the day of Douglas's murder, Young was with Mark Ray, David Page, Darnell McCoy, and Doyle Douglas. The five men drove in Douglas's car to buy marijuana at a residence in Longview, Texas. When Page returned to the car, having failed to get any marijuana, Young shot Douglas twice in the head at close range with a .22 caliber pistol. Young, Ray, Page, and McCoy—allegedly under threat from Young—then disposed of Douglas's body in a creek, where Ray apparently shot Douglas's dead body in the head.

After the murder Young became concerned that someone might recognize Douglas's car, which Young was driving. To obtain a new vehicle, Young and Page kidnapped Samuel Petrey in a grocery store parking lot and took his truck. A day later, concerned that Petrey could identify them, Young and Page drove Petrey to an isolated pumping station where Young shot and killed him. Young and Page then parted ways and Page reported the crimes to the police. Young was apprehended while driving Petrey's truck. At the time he was arrested he had a .22-caliber pistol in his possession which was later connected to the shell casings found at both murder sites. *See Young v. State*, No. AP-74643, 2005 WL 2374669, at *1–3 (Tex. Crim. App. Sep. 28, 2005) (detailing the murders).

At trial Ray, McCoy, and Page testified against Young. The prosecution stated that Ray and Page had not been offered any consideration for their testimony, except that Ray received testimonial immunity. After trial, Ray pleaded guilty to kidnapping, and received a fifteen-year sentence. Page

No. 14-70011

pleaded guilty to aggravated kidnapping and received a thirty-year sentence. McCoy was not charged for any crimes related to Douglas's murder.

The Texas Court of Criminal Appeals ("TCCA") affirmed Young's conviction on direct appeal. On April 22, 2005, Young filed his first state habeas claim while his direct appeal was pending, alleging fourteen errors. The state court held four days of hearings and thereafter recommended denying relief. A few months later Young moved to add eight new claims to his request for relief. The TCCA reviewed the record and concurred with the trial court's recommendation to deny relief; it also dismissed Young's new claims as a subsequent writ application and thus an abuse of the writ under Texas law. *Ex Parte Young*, No. WR-65137-01, 2006 WL 3735395, at *1 (Tex. Crim. App. Dec. 20, 2006). Young filed a petition for a writ of habeas corpus in the District Court for the Western District of Texas on December 20, 2007. On October 20, 2008, Young filed a motion to stay his federal case in order to return to state court and advance new prosecutorial misconduct claims. *Young v. Stephens*, No. CIV. MO-07-CA-002, 2014 WL 509376, at *1 (W.D. Tex. Feb. 10, 2014) *vacated in part*, 2014 WL 2628941 (W.D. Tex. June 13, 2014). The motion to stay was granted on February 25, 2009. *Id.* at *16. Young then filed his second subsequent petition for writ of habeas corpus with the state court.

Young asserted a variety of claims, including that the government withheld information about Ray and Page's plea agreements (which Young allegedly discovered in 2008) and that his trial counsel was ineffective for failing to prove that Ray and Page shot Douglas. The TCCA certified two issues and remanded the case to the trial court for consideration. *Ex Parte Young*, WR-65137-03, 2009 WL 1546625 (Tex. Crim. App. June 3, 2009). The state trial court held five days of evidentiary hearings to consider whether the prosecution withheld evidence related to plea negotiations with Ray and Page, as well as whether the prosecution withheld impeachment evidence that could

3

have been used in cross-examination of A.P. Merillat.  *Ex Parte Young*, No. CR27181-C (385th Judicial Dist., Midland County, Texas, May 18, 2011).  The state court denied Young's petition for a writ on May 18, 2011, in a thorough 149-page opinion, holding "as a matter of fact that there was no express or implied plea agreement between Mark Ray and the State" or "David Page and the State."  *Ex Parte Young*, No. CR27181-C at *63–99, 123–140; *Young*, 2014 WL 509376, at *22.  The TCCA affirmed.  *Ex parte Young,* WR–65137–03 (Tex. Crim. App. June 20, 2012).

On October 18, 2012, Young filed his second amended federal habeas petition, which exceeded four-hundred pages.  The district court denied this petition on February 10, 2014, issuing a comprehensive two-hundred page opinion.  *Young*, 2014 WL 509376, at *199.  The district court considered Young's *Brady* claim that "the prosecution failed to disclose to petitioner's trial counsel that it had offered prosecution witnesses Page and Ray 'informal promises of leniency and of favorable plea agreements'" and that "the prosecution knowingly elicited false testimony from both Page and Ray denying the existence of any promises or deals."  *Id*. at *26.

First, the district court noted that the state court had already heard "extensive live testimony" and found that there "were no plea agreements or promises of leniency made to either Page or Ray" and that "neither Page nor Ray testified falsely during petitioner's trial."  *Id*.  The court considered the testimony from Young's third state habeas proceeding, where both Ray and his mother testified that Ray was offered a five-year sentence by a Sheriff's Deputy but not a prosecutor, in exchange for testifying against Young.  *Id*. at *17, 28.  The district court, however, did not find this testimony credible.  The court explained that the relevant prosecutors and investigators denied making any plea offer.  *Id*.  More importantly, Ray's trial counsel testified that, though

4

No. 14-70011

there were some preliminary discussions about a plea agreement, those conversations did not result in an actual plea offer. *Id.*

The district court also examined Page's testimony at the third state habeas proceeding. Page discussed a possible thirty-year plea deal with the prosecution. *Id.* at *29. This deal was conditioned on passing a polygraph test, which Page failed. *Id.* Consequently, Page's trial attorney did not believe that there was any plea agreement for Page. *Id.* Page's trial counsel testified that though Page hoped he would receive leniency for cooperating, he understood that there was not an enforceable agreement. *Id.* Further, the prosecution denied making any plea offers to Page. *Id.*

Based on the foregoing, the district court found that "the state habeas court reasonably rejected as factually flawed petitioner's contentions that either Page or Ray had been offered a plea agreement or that promises of leniency had been made to Ray or Page to induce their trial testimony against petitioner." *Id.* at *30. Hence,

> petitioner failed to show the existence of any evidence at the time of petitioner's trial concerning secret plea agreements or promises of leniency that could have been used to impeach Ray's or Page's trial testimony. Petitioner's first claim does not satisfy the first or second prongs of *Brady* analysis, i.e., petitioner has failed to establish that any potentially beneficial information regarding undisclosed plea agreements or promises of leniency made to Ray or Page actually existed at the time of petitioner's trial. In addition, because petitioner failed to establish that Ray or Page furnished any factually inaccurate testimony at petitioner's trial, petitioner's first claim also fails to satisfy the first and third prongs of *Giglio/Napue* analysis, i.e., petitioner failed to show Ray or Page gave any false testimony or that prosecutors knew Ray or Page testified falsely.

*Id.*

On June 3, 2014, four months after the district court's denial, Young filed a motion to supplement the district court record with recently obtained

No. 14-70011

statements from James Kemp, Russell Stuteville, Amanda Williams, Pat Brook, and Page.[1] Young also filed motions to alter the judgment, for a COA, and for a stay to return to state court. The district court denied these motions, noting that "[o]ne of the recurrent problems in this cause has been petitioner's refusal to acknowledge the limited scope of this Court's authority in this federal habeas corpus proceeding." *Young*, 2014 WL 2628941, at *3. As to *Brady*, the court found that Young appeared to be attempting to relitigate the district court's ruling. *Id.* at *18. But, if the claim was actually supported by new evidence, then the remedy was to "obtain permission for the filing of a successive federal habeas corpus petition from the Fifth Circuit *before* requesting a stay from this court." *Id.* The district court denied the motion to supplement on the grounds that defense counsel's hearsay declarations had "no evidentiary value." *Id.* at *19.

## II.

Young must obtain a COA before appealing the district court's denial of habeas relief. 28 U.S.C. § 2253(c). "Unless a circuit justice or judge issues a [COA], an appeal may not be taken to the court of appeals . . . " 28 U.S.C. § 2253(c)(1). The issuance of a COA requires a petitioner to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). This requires a petitioner to "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks and alteration omitted).

---

[1] A description of the content of these statements can be found in this court's denial of Young's motion to file a successive petition. *In re Young*, No. 14-51288, 2015 WL 3649765, at *4–6 (5th Cir. June 8, 2015).

No. 14-70011

In making this determination, we examine the district court's application of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to the petitioner's claims and "ask whether that resolution was debatable amongst jurists of reason." *Id.* This does not require a showing that the appeal will succeed or a "full consideration of the factual or legal bases adduced in support of the claims." *Id.* at 336–37. Instead, the debatability of AEDPA's application to the underlying constitutional claims is a threshold analysis, determined by "an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* at 336.

Under AEDPA, a federal court may not issue a writ of habeas corpus for a state conviction unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Analyzing § (d)(1), a state court's decision is contrary to clearly established federal law if: "(1) the state court 'applies a rule that contradicts the governing law' announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts." *Nelson v. Quarterman,* 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza,* 540 U.S. 12, 15–16 (2003)). Similarly, § (d)(2) "requires that we accord the state trial court substantial deference." *Brumfield v. Cain,* 135 S. Ct. 2269, 2277 (2015). If "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.* (quoting *Wood v. Allen,* 558 U.S. 290, 301 (2010)).

7

No. 14-70011

We review the district court's conclusions of law de novo and findings of fact for clear error. *Thompson v. Cain,* 161 F.3d 802, 805 (5th Cir. 1998). AEDPA specifically provides that the "determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner satisfies "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Lastly, we reiterate that "a COA determination is a 'threshold inquiry' that 'does not require full consideration of the factual or legal bases adduced in support of the claims.'" *Jordan v. Fisher*, 135 S. Ct. 2647, 2651 (2015) (Sotomayor, J., dissenting from denial of certiorari) (quoting *Miller-El*, 537 U.S. at 337). "'[A] COA ruling is not the occasion for a ruling on the merit of [a] petitioner's claim.'" *Id.* at 2652 (quoting *Miller-El*, 537 U.S. at 331). "It requires only 'an overview of the claims in the habeas petition and a general assessment of their merits.'" *Id.* (quoting *Miller-El*, 537 U.S. at 336).

## III.

Young requests a COA for seven issues, which fall into three categories: 1) the prosecution's alleged violation of *Brady*/*Napue*; 2) five instances of IAC; and 3) cumulative error. All of these claims were considered by the district court, which denied Young's motions for COAs. We decline to grant Young a COA on any of these issues because they are either procedurally barred, meritless, or both.

### I. *Napue*/*Brady*

Young's brief contains a de novo reweighing of his *Brady* evidence. But such a de novo review is not our role. Instead AEDPA requires us to consider whether it is debatable that the state court decision was based on an unreasonable determination of the facts or an unreasonable application of clearly established federal law. Young's challenge falls well short of the threshold that would merit a COA.

No. 14-70011

The district court carefully considered the evidence presented in the second successive state habeas proceeding, which involved five days of testimony regarding Young's *Brady* claims. *Young*, 2014 WL 509376, at \*28–30. During this proceeding the two district attorneys, Rick Berry (Harrison County DA) and Al Schorre (Midland County DA), as well as Young's defense counsel, Richard Hurlburt, testified that there were no plea agreements. Ray and Page also testified that there were no pre-trial plea agreements with the prosecutors. Ray's wife testified too that there was no deal with the prosecutors. Former sheriffs and investigators who took part in the case or were around Ray testified that they never overheard discussions of a plea agreement. The state court also noted that Ray was given immunity for his testimony at trial and that this immunity was disclosed to Young's defense counsel and explained to the jury. The state court analyzed all of this testimony and concluded that there was not a *Brady* violation because there were no plea agreements with Page or Ray. The district court, after conducting its own analysis of the evidence, agreed. We see nothing in Young's petition that calls this determination into question.

Young's argument before this court is that Ray was, in fact, offered an undisclosed plea deal.[2] He argues that the state court erred in not giving more weight to Ray's testimony regarding offered plea deals and that "Young has at least debatably shown Ray received inducements." But he ignores that the state court expressly discounted Ray's testimony in the second successive state habeas proceeding as unbelievable in light of the contradictory evidence presented by the government. Nothing in the record suggests that the state

---

[2] Young claims that "[t]he Director does not dispute the suppression element." But, of course, the Director does because the Director contends that the state habeas court correctly determined that there was never a bargain and thus, by extension, no suppression.

court gave unreasonable weight to the evidence that contradicted Ray.[3]  As a result, it is undebatable that the state court's factual determination that Ray was not offered a plea agreement was not an unreasonable determination, so the COA is denied.

Young's request for a COA regarding plea deals allegedly offered to Page suffers the same defect as his request for a COA regarding Ray.  Both Page's attorney and the district attorneys have said consistently throughout these proceedings that Page was offered a conditional plea, predicated on passing a polygraph, and that when he failed that polygraph the plea negotiations ended. Consequently, we find that it is not debatable that the district court properly denied Young's habeas petition with regard to Page's alleged plea bargain. Thus no COA is warranted.

Further, even if Young's allegations of *Brady* violations were correct, we agree with the district court's conclusion that these nondisclosures were immaterial in light of the evidence presented at trial.

> [T]here is not even a remote possibility, much less a reasonable probability [that] the outcome of either phase of petitioner's capital murder trial could have been any different had the prosecution disclosed to petitioner's counsel prior to trial either (1) [a DA] made a comment shortly after Ray's arrest that he 'probably would make [Ray] an offer he couldn't refuse' or (2) [a DA] discussed with Page's attorney . . . the possibility of Page receiving a thirty-year sentence prior to the time Page flunked the polygraph examination.

*Young*, 2014 WL 2628941, at *8.  Not only was the evidence against Young overwhelming, but the biases and motivations of the eyewitnesses were also

---

[3] In fact, the record offers ample evidence to show that Ray was duplicitous when testifying.  *Young*, 2014 WL 509376, at *28 (stating that Ray's testimony was directly contradicted by prosecutors, investigators, and his own trial counsel and that Ray's testimony itself was contradictory); *see also Young*, 2014 WL 2628941, at *8 ("To call Ray's testimony before the state habeas court anything other than ambiguous would be inaccurate.")

evident at trial.  Young's alleged new evidence may create an issue of the degree of that bias or motive to fabricate, but it does not create a new argument.  Faced with the other evidence adduced at trial, it is undebatable that no reasonable jurist could conclude that the outcome of the trial could have been any different.

II.  Ineffective Assistance of Counsel

Young alleges that his counsel was ineffective because he did not: (1) test ballistics from the crime scene; (2) call Raynaldo Villa as a witness; (3) test Douglas's vehicle for bullet holes; (4) conduct a forensic examination of the murder-site gloves; or (5) object to the admission of jail records.  The district court denied as procedurally barred Young's claims related to: (1) not calling Raynaldo Villa to testify, (2) not testing Douglas's vehicle for bullet holes, (3) not conducting a forensic examination of the murder-site gloves; and (4) not objecting to jail records.  We concur.  We also find Young's ballistics claim meritless.

**A.  Failure to Call Raynaldo Villa**

First, Young challenges the district court's determination that his trial counsel's failure to call Raynaldo Villa was not IAC.  Young claims that Villa would have testified that he heard Page admit to shooting Petrey.  There are two problems with this argument.  First, the record shows that Young's trial counsel did not learn about any alleged statements until after trial, thus eliminating the possibility of IAC at trial.  *Young*, 2014 WL 509376, at *131 ("There is no fact-specific allegation now before this Court, much less any evidence, showing . . . petitioner's defense team were otherwise aware of Villa's knowledge of Page's allegedly inculpatory comment prior to the conclusion of petitioner's trial . . . [or that] through the exercise of due diligence [such evidence] could have [been] discovered . . . prior to the conclusion of petitioner's trial.").  Thus there can be no IAC.

11

Second, this claim is unexhausted and procedurally barred. *Id.* at \*128–29. Young admits that he did not exhaust this claim but attempts to avoid procedural default by arguing that mentioning Villa's declaration in his motion for a new trial was sufficient to exhaust his claim. This argument is unsupported by precedent. It is also contrary to the standard for exhaustion in habeas cases, which requires that Young provide the highest court of the state (the TCCA in this case) an opportunity to consider the alleged constitutional error. *Smith v. Quarterman*, 515 F.3d 392, 402 (5th Cir. 2008). Given that, at best, Young referenced Villa's testimony in his motion for a new trial and did not appeal this issue to the TCCA, no reasonable jurist could debate that this claim was procedurally defaulted.

**B.   Failure to Test Douglas's Vehicle or the Gloves from the Petrey Murder Scene and Failure to Object to Jail Records**

Next Young challenges his trial counsel's failure to: (1) test Douglas's vehicle to determine the source of two .22-caliber shell casings found in the front passenger side of Douglas's car; (2) test the gloves found at the Petrey murder scene for gunshot residue; and (3) object to the admission of his Midland County Jail records at sentencing. The district court found each of these claims procedurally barred. Young contends that the failure to raise these claims should be excused, pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), because it resulted from the failure of his state habeas counsel to raise them.

Young advanced these three claims after his first state habeas petition was filed. They were dismissed as an abuse of the writ by the TCCA. *Young*, 2006 WL 3735395. Young restated a variation on the same claims in his second subsequent state habeas complaint, and these claims were also dismissed. *Young*, 2009 WL 1546625. Based on this procedural history the district court did not err in holding that the TCCA's multiple dismissals of these complaints,

based upon state writ-abuse principles, bar federal habeas review. *Young*, 2014 WL 509376, *124, 126, 143, 154; *see Coleman v. Quarterman*, 456 F.3d 537, 542 (5th Cir. 2006) (holding that "Texas's abuse of the writ doctrine is a valid state procedural bar foreclosing federal habeas review").

We decline to consider Young's claim that *Martinez* applies and overcomes this procedural default. Young's *Martinez* argument is not properly raised or briefed by his passing references to the case without explanation of how the elements of *Martinez* are satisfied. *See Martinez,* 132 S. Ct. at 1318–19 (holding that petitioner must establish that "the claim should have been raised, [state habeas counsel] was ineffective under the standards of [*Strickland*]," . . . and "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one.").[4]

**C. Ballistics Evidence**

Lastly, Young alleges that his trial counsel was ineffective because he failed to introduce Tim Counce's ballistics report and Richard Ernest's forensic report, which allegedly show that Ray possessed the gun that shot Douglas. He also argues that his trial counsel explained the ballistics improperly during closing argument. Young's IAC argument concerning Counce's ballistics report and Ernest's forensic report was rejected by the state court and the TCCA in Young's first state habeas claim. *See Young*, 2006 WL 3735395, at *1. Young raised related IAC claims in March 2006; those claims were denied as a subsequent state habeas application. *See id.* Young's second subsequent state habeas claim reiterated these previous arguments and also argued, for the first

---

[4] Though we agree with the district court's analysis concerning Young's failure to satisfy *Martinez*'s merit and prejudice prongs for each of these IAC claims, since this is a threshold analysis and the claims are procedurally barred, there is no need to explain an alternative holding.

time, that his counsel improperly explained the ballistics during closing: this claim was dismissed. *Young*, 2009 WL 1546625, at *1.

The district court dismissed Young's new ballistics IAC claims as procedurally barred because they were dismissed by the TCCA under the Texas writ-abuse statute in both Young's first successive and second successive habeas proceedings. *Young*, 2014 WL 509376, at *143.[5] The district court also found, in the alternative, that this IAC claim failed to satisfy either prong of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at *144–47; *Young*, 2014 WL 2628941, at *9–13. We agree that no reasonable jurist could debate whether Young's counsel was ineffective for failing to present the ballistics evidence or the forensics report or for improperly explaining ballistics during closing.[6]

The district court thoroughly and accurately summarized the testimony adduced in Young's trial. *Young*, 2014 WL 509376, at *2–12. All three eyewitnesses testified consistently that Young shot Douglas in the head. Brook testified that within hours of the murder Young confessed to him that he shot Douglas in the head. Douglas's body, which the police found with eyewitness assistance, had head wounds. When Young was apprehended he had the gun that shot the casings found in Douglas's car and near Petrey's body.

In contrast to this robust evidence, the ballistics evidence Young claims created IAC is of little significance. The precise manner in which Douglas was shot was not well-established in trial because the eyewitness testimony was

---

[5] The district court subsequently amended its procedural holding because it incorrectly stated that Young did not present Ernest's report to the state habeas court. *Young*, 2014 WL 2628941, at *10.

[6] The government has presented an alternative theory of procedural default based on *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). While the court is free to affirm the district court on any grounds, we need not address this argument because Young's claim is clearly meritless.

14

inconsistent concerning the details of where in the head Douglas was shot. The witnesses were not, however, inconsistent when identifying Young as the shooter. There is simply little value to demonstrating inconsistencies between the eyewitness descriptions of the fatal shots and the ballistics. Additionally, Young was charged with both Douglas's murder and being a party to Ray shooting Douglas. Thus—even though the ballistics evidence does not demonstrate that Ray shot Douglas—any evidence showing Ray killed Douglas would also inculpate Young, who was a party to Ray's conduct.

Ineffective assistance of counsel exists where counsel makes "errors so serious that counsel is not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Not presenting ballistics evidence that does not demonstrate innocence and is largely irrelevant to the determination of guilt, does not arguably constitute such an error. Considering the evidence against Young and the value of the evidence he claims should have been admitted at trial, we affirm the district court's ruling that no reasonable jurist could disagree with the district court's holding that Young's IAC claim did not satisfy *Strickland*.

III. <u>Cumulative Error</u>

The district court found Young's cumulative error claim both procedurally barred and meritless. *Young*, 2014 WL 509376, at \*187–88. We agree with both of the district court's bases for denial of the petition. Because the TCCA dismissed this cumulative error argument on state-law grounds (the Texas writ-abuse statute), *Young*, 2009 WL 1546625, the claim is procedurally barred. *See Coleman*, 456 F.3d at 542. Regardless, the district court was also correct that Young has failed to demonstrate that there was any constitutional error committed during his trial, which is required to satisfy the cumulative error doctrine. *Young*, 2014 WL 509376, at \*187–88 (citing *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007)).

No. 14-70011

IV.

Young also challenges the district court's denial of his second motion to stay in order to advance a *Brady* claim and the claim that he is innocent of capital murder.  A COA is not required to review the district court's ruling on a non-merits issue such as a stay.  *See Dunn v. Cockrell*, 302 F.3d 491, 492 (5th Cir. 2002) (per curiam) (holding that a COA is not required to appeal denial of a Rule 60 motion).  Young's contention is two-fold.  First, in light of his new *Brady* evidence, he argues that the district court abused its discretion by denying his request to return to state court to pursue his *Brady* and innocence claims.  Second, he argues that the district court erred when it denied his motion to supplement his petition with his counsel's declarations regarding alleged recantations by Kemp, Stuteville, Williams, Brook, and Page.

I. Motion to Stay

A "stay and abeyance should be available only in limited circumstances" because "[s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality . . . . [and] streamlining federal habeas proceedings." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  "[S]tay and abeyance is only appropriate where [1] the district court determines there was good cause for the petitioner's failure to exhaust his claims in state court"; (2) the claim is not "plainly meritless"; and (3) there is no indication that the petitioner is "engag[ing] in abusive litigation tactics or intentional delay."  *Id.* at 277–78.  On appeal we review a district court's denial of a stay and abeyance for abuse of discretion.  *Id.* at 279.

The district court focused primarily on the merits of Young's argument, element two, and found the argument wanting.  *Young*, 2014 WL 2628941, at *18.

> At worst, petitioner's motion for stay seeks the opportunity to re-
> litigate the same *Brady* and *Giglio–Napue* claims the state habeas

16

court and this Court concluded were *without arguable merit* by employing a new list of witnesses who will give the same basic testimony as the witnesses petitioner called during his most recent state habeas corpus proceeding.

. . . .

Petitioner has failed to support his motion for stay with sufficient direct evidence showing his new *Brady* and *Giglio-Napu[e]* claim[s] are any more likely to be meritorious than the ones petitioner spent the last several years litigating in the state habeas court and before this Court.

*Id.* at \*18–19 (emphasis added).

The district court did not abuse its discretion in finding that Young's claim is plainly meritless. Assuming that the submitted declarations are accurate reflections of the witnesses' new testimony, in any subsequent state court proceeding those witnesses would be impeached with a decade's worth of contradictory statements that they made concerning the absence of plea agreements. They would also clash with the credible testimony of both the trial and defense counsels, who testified that there were no plea agreements.[7] It is not reasonable to conclude that this collective evidence could lead to a finding that a *Brady* violation occurred. Thus it was not an abuse of discretion to deny Young's motion for a stay.[8]

---

[7] Young correctly notes that the district court said that Young had not made a "strong showing" that he was likely to succeed on the merits, though Young need only show that his claims are potentially meritorious. *Young*, 2014 WL 2628941, at \*18 (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). This takes the court's language out of context as it also states that Young's argument, like his previous one, is "without arguable merit." *Id.* The court also held that Young's new claim was not "any more likely to be meritorious than the ones petitioner spent the last several years litigating." *Id.* at \*19.

[8] It is likely that Young has not demonstrated good cause for the delay or that this is not an instance of abusive litigation. We affirm on the grounds explained by the district court, however, and do not reach these issues.

No. 14-70011

The district court also noted that, if Young's claims are truly new, then what he is requesting is not a stay but rather permission to file a successive petition. *Young*, 2014 WL 2628941, at *18 ("[I]f they truly be new claims, [it] might justify an Order from the Fifth Circuit pursuant to Title 28 U.S.C. § 2244(b)(3)."). Indeed, just two months after filing this appeal, Young filed a motion for authorization to file a successive petition. That motion described the affidavits as "newly-discovered evidence [that] gives rise to new claims that have not been presented in any prior habeas corpus application." That motion was denied. *In re Young*, No. 14-51288, 2015 WL 3649765, at *1 (5th Cir. June 8, 2015). We need not consider it again now.

Lastly, Young claims that a stay is warranted to advance a "potentially meritorious new claim of actual innocence." This claim is not properly before this court. In the district court Young brought a procedurally barred actual innocence claim. *Young*, 2014 WL 509376, at *188–90. He *implied* that a stay should be granted in order to allow him to bring an actual innocence claim based on his new evidence, but he did not actually make this argument. *See Young*, 2014 WL 2628941, at *19. As a result, Young's actual innocence claim based on the alleged new evidence is not properly on appeal in this court.

II. Motion to Supplement

Young argues that the district court abused its discretion by denying his motion to supplement his motion for a stay. The district court denied the motion to supplement because the submitted declarations of counsel offered no evidentiary value, recanting affidavits are suspicious, and, if supplementation were allowed, it would only be for the actual statements of the recanting witnesses. *Young*, 2014 WL 2628941, at *19. In response, Young cites Federal Rule of Civil Procedure 15, which allows the court to permit supplementation

of pleadings,[9] and *Rhines*, which he contends "requires only that the petitioner allege a colorable claim" to support a claim for a stay.

The district court did not abuse its discretion by denying Young's motion to supplement. Young has not cited any law that required the district court to grant his motion. Given the absence of such a requirement we find that the district court articulated a reasonable justification for its denial. Young filed a federal habeas petition with the district court on December 20, 2007. On October 20, 2008, Young filed a motion to stay his case in order to return to state court and advance new prosecutorial misconduct claims. The district court granted that motion. Later the district court comprehensively reviewed the evidence presented in state court and concluded that no plea bargains had been offered. Based on this procedural history and the district court's intimate familiarity with the facts of the case, the district court concluded that Young's counsel's declarations were of little or no value. This is not an unreasonable interpretation and is not, therefore, an abuse of discretion.

V.

For these reasons we DENY all of Young's motions for certificates of appealability and AFFIRM the district court's denial of Young's motion for stay and abatement and motion to supplement.

---

[9] Rule 15 concerns the supplementation of pleadings, not the addition of evidence to a habeas petition, and thus is inapposite. *See, e.g.*, *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998)