# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60720

United States Court of Appeals
Fifth Circuit

**FILED**

March 8, 2016

Lyle W. Cayce
Clerk

FREDERICK DENELL GRIM,

Petitioner - Appellee,

v.

MARSHALL L. FISHER, COMMISSIONER, MISSISSIPPI DEPARTMENT
OF CORRECTIONS; TIMOTHY OUTLAW, Warden, Marshall County
Correctional Facility,

Respondents - Appellants.

Appeal from the United States District Court
for the Northern District of Mississippi

Before JONES and SMITH, Circuit Judges, and FITZWATER[*], District Judge.
FITZWATER, District Judge:

This appeal from a judgment granting habeas relief based on the Sixth Amendment Confrontation Clause turns on whether, as the district court held, the Supreme Court's decision in *Bullcoming v. New Mexico*, 564 U.S. ___, 131 S.Ct. 2705 (2011), clearly establishes as federal law that, when the prosecution introduces a forensic laboratory report in evidence, the criminal defendant has a right to confront the analyst who performed the underlying analyses.[1] The

---

[*] District Judge of the Northern District of Texas, sitting by designation.

[1] *Bullcoming* recognizes that, under *Crawford v. Washington,* 541 U.S. 36 (2004), the

## No. 15-60720

question presented in this case is whether *Bullcoming* clearly establishes that the prosecution cannot introduce a forensic laboratory report containing a testimonial certification of an analyst—made for the purpose of proving a particular fact—through the testimony of a technical reviewer who verified the analyst's findings, agreed with a reasonable degree of scientific certainty with the analyst's examinations and the results of the analyst's report, and signed the certification. Because we hold that *Bullcoming* does not clearly establish this as federal law, we reverse the district court's judgment and render judgment denying habeas relief.

I

Petitioner-appellee Frederick Denell Grim ("Grim") was convicted in Mississippi circuit court of the offense of sale of cocaine as a habitual and second and subsequent offender and sentenced to life imprisonment without parole. The trial judge permitted Erik Frazure ("Frazure"), a forensic scientist with the Mississippi Crime Laboratory who specialized in drug analysis or controlled substance analysis, to testify over Grim's objection that the substance in question was cocaine base.[2] Frazure was a technical reviewer who had neither observed nor participated in the testing of the substance.

---

accused need not be confronted with the analyst if the analyst is unavailable at trial and the accused had an opportunity before trial to cross-examine the analyst. *Bullcoming*, 131 S.Ct. at 2713; *see Crawford,* 541 U.S. at 59. Because this exception is not at issue in this appeal, we assume that it applies and do not refer to it except where the context requires.

[2] Grim did not object to Frazure's testifying as an expert in forensic science and drug analysis.

No. 15-60720

Gary Fernandez ("Fernandez"), the analyst who performed the testing and generated the report concluding that the substance was cocaine base, did not testify. *See Grim v. State*, 102 So.3d 1073, 1075, 1077 (Miss. 2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 2856 (2013).

At trial, Frazure briefly described his education, background, and experience working in the Mississippi Crime Laboratory, he explained the process followed when an item is received for forensic examination, and he testified concerning the procedures followed by the analyst assigned to the case. According to Frazure, after the analyst performs examinations on an item of evidence to determine whether it contains a controlled substance, the analyst prepares a report containing his conclusions. The report is given to a technical reviewer like Frazure, who looks at the report and all of the data, including everything the analyst did to the item of evidence. The technical reviewer ensures that the analyst did proper examinations, that the analyst's interpretation of the results of the examinations is correct, that the conclusion of the analyst from the collective examinations is correct, and that the conclusion is conveyed in an understandable manner in the report. The purpose of having a technical reviewer is part of the quality assurance and quality control methods within the crime laboratory and ensures that the laboratory is doing quality work or correct work each and every time.

After offering Frazure's foundational testimony, the State sought to introduce in evidence the crime lab report containing Fernandez's signature and Frazure's signature and initials, and the item of evidence alleged to be cocaine. When the State attempted to introduce Frazure's testimony

3

concerning the tests performed, Grim objected on confrontation grounds, contending that he was entitled to have the person who actually analyzed the drugs present for questioning, and that Frazure was merely a technical reviewer who went through the process of quality assurance but did not do the analysis.  In a hearing outside the jury's presence, Frazure testified that he did not physically analyze the item of evidence; instead, Fernandez completed his examinations using a gas chromatograph and mass spectrometer and generated a work packet containing the results. Frazure then reviewed the work packet to ensure that Fernandez had done the proper tests for this type of evidence.  Frazure testified:

> I took that work packet and I reviewed the work packet to ensure that he did the proper tests, which was in this case a color test and a [gas chromatograph, mass spectrometer], ensured that those were both proper tests for this type of evidence, and I looked to see the results that he had and made sure the results from those two examinations did coincide with the results that he — or the conclusion that he formed, and I made sure that that — the conclusion that he formed with his report was correct[] with the conclusion that was in his work packet.

In response to questions from the trial judge, Frazure confirmed that he had reviewed the results of Fernandez's tests and signed off on them.  The trial judge then concluded that Frazure had enough dealings with the technical review of the cocaine to be allowed to testify.

After the trial judge made this ruling, the State offered Frazure's testimony that he was the technical reviewer in the case; he reviewed the work

No. 15-60720

packet and report that Fernandez had generated; the work packet contained all the examinations that were performed on the item of evidence and the results of any data generated for the particular tests; Frazure looked at the examinations to ensure that the proper ones were done; Frazure looked at the results to ensure that Fernandez had interpreted the results correctly; and Frazure looked to ensure that the results of the examinations coincided with the conclusion in the report, and that this was stated in a readable or understandable manner.  Frazure then testified over Grim's objection that the item of evidence contained cocaine base, and that the amount submitted to the laboratory was 3.2 grams.

On cross-examination, Grim's counsel established that Fernandez had actually done the testing of the item of evidence and determined that it was cocaine; Fernandez was the case analyst; although Frazure was likely present within the laboratory when the testing was done, he did not actually test the evidence in question or observe the testing; Frazure checked the results of all of Fernandez's examinations but did not do any firsthand scientific analysis of the item; and he basically analyzed the paperwork to ensure that Fernandez had followed the proper procedure to obtain the result.  Frazure also testified that Fernandez did proper examinations on the item of evidence, and that Frazure could look at the data generated from the examinations, and "with a reasonable degree of scientific certainty I agree with his examinations and the results of his—or the results of the report."  On redirect examination, Frazure testified that, after going over the work that Fernandez had done, Frazure had no doubts based on the paperwork that the item in question was cocaine.

5

No. 15-60720

The jury convicted Grim, and his conviction and sentence were affirmed on appeal. *Grim v. State*, 102 So.3d 1123 (Miss. Ct. App. 2010), *aff'd*, 102 So.3d 1073 (Miss. 2012). The Supreme Court of the United States denied Grim's petition for a writ of *certiorari*. *Grim v. State*, ___ U.S. ___, 133 S.Ct. 2856 (2013).

While Grim's petition for a writ of *certiorari* to the Supreme Court of Mississippi was pending, the Supreme Court of the United States decided *Bullcoming*. Grim filed a supplemental brief in which he argued, in pertinent part, that, under Mississippi case law and *Bullcoming*, his right of confrontation was violated when the State was permitted to present a technical reviewer to testify regarding tests that the witness had not performed and for which the witness had not been present when the tests were performed.

The Supreme Court of Mississippi granted Grim's petition for a writ of *certiorari* "to examine whether the trial court erred by allowing a laboratory supervisor, who neither observed nor participated in the testing of the substance, to testify in place of the analyst who had performed the testing." *Grim*, 102 So.3d at 1075. After discussing federal and Mississippi Confrontation Clause jurisprudence, including *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), *Bullcoming*, and one of its own decisions, *Conners v. State*, 92 So.3d 676 (Miss. 2012), the court concluded that "[n]one of these cases stands for the proposition that, in every case, the only person permitted to testify is the primary analyst who performed the test and prepared the report." *Id.* at 1079. The court then explained that it "has said that there are instances in which 'someone other than the primary analyst who

6

conducted the test can testify regarding the results,'" *id.* (quoting *Conners*, 92 So.3d at 690), and that it applies a two-part test "[t]o determine if a witness satisfies the defendant's right to confrontation." *Id.* (citing *McGowen v. State*, 859 So.2d 320 (Miss. 2003)). Under this bipartite test, the Supreme Court of Mississippi asks, first, "'whether the witness has 'intimate knowledge' of the particular report, even if the witness was not the primary analyst or did not perform the analysis firsthand.'" *Id.* (quoting *Conners*, 92 So.3d at 690). The court then asks, second, "'whether the witness was 'actively involved in the production' of the report at issue.'" *Id.* (quoting *Conners*, 92 So.3d at 690). A witness must "'be knowledgeable about both the underlying analysis and the report itself to satisfy the protections of the Confrontation Clause.'" *Id.* (quoting *Conners*, 92 So.3d at 690).

The court then explained that, in *McGowen*, it held that there is no Sixth Amendment violation "'when the testifying witness is a court-accepted expert in the relevant field who participated in the analysis in some capacity, such as by performing procedural checks.'" *Id.* (quoting *McGowen*, 859 So.2d at 339) (emphasis omitted). In *McGowen* "although one analyst had performed most of the testing, a second analyst who had assisted in the testing and in preparing the report was qualified to testify about the crime lab report" because "[t]he testifying analyst was 'actively involved in the production of the report and had intimate knowledge of the analyses even though she did not perform the tests first hand.'" *Id.* at 1079-80 (quoting *McGowen*, 859 So.2d at 340).

The Supreme Court of Mississippi noted that, in *Brown v. State*, 999

No. 15-60720

So.2d 853 (Miss. Ct. App. 2008), the Mississippi Court of Appeals had correctly applied the principles from *McGowen*.  In *Brown* the testifying analyst was the laboratory manager rather than the primary analyst who had performed the tests at issue.  But "[t]he testifying analyst had reviewed the work of the analyst who had performed the DNA tests, had conducted her own analysis of the testing, and had reached her own conclusions."  *Id.* at 1080 (citing *Brown*, 999 So.2d at 860).  The Court of Appeals concluded that the laboratory manager's testimony did not violate the defendant's right of confrontation because the manager was sufficiently involved with the analysis and overall process.

Regarding Grim's Confrontation Clause challenge, the Supreme Court of Mississippi concluded that although Frazure was the laboratory supervisor and "was not involved in the actual testing, he had reviewed [Fernandez's] report for accuracy and signed the report as the 'case technical reviewer.'" *Grim*, 102 So.3d at 1081.  The court held that "Frazure satisfied the *McGowen* test because he had 'intimate knowledge' about the underlying analysis and the report prepared by the primary analyst."  *Id.*  He was "much like the laboratory manager in *Brown*, who the Court of Appeals held was 'sufficiently involved with the analysis and overall process' so that his testimony did not violate the defendant's Sixth Amendment right of confrontation." *Id.* (quoting *Brown*, 999 So.2d at 861).

No. 15-60720

> Frazure was able to explain competently the types of tests that were performed and the analysis that was conducted. He had performed "procedural checks" by reviewing all of the data submitted to ensure that the data supported the conclusions contained in the report. Based on the data reviewed, Frazure had reached his own conclusion that the substance tested was cocaine. His conclusion was consistent with the report, and he had signed the report as the technical reviewer. Frazure satisfied the *McGowen* test because he had "intimate knowledge" about the underlying analysis and the report prepared by the primary analyst.

*Id.*

Grim filed a timely petition for a writ of habeas corpus in federal district court,[3] contending that the decision of the Supreme Court of Mississippi affirming his conviction was contrary to, or an unreasonable application of, *Bullcoming*. The petition was referred to the magistrate judge, who recommended that the petition be granted. In his report and recommendation, the magistrate judge first discussed the decision of the Supreme Court of Mississippi and its reliance on *McGowen* and *Brown*. He concluded that "there [was] little doubt that the Supreme Court of Mississippi was entirely correct in its application of Mississippi law." *Grim v. Epps*, 2015 WL 5883163, at *8 (N.D. Miss. Apr. 6, 2015), *rec. adopted*, 2015 WL 5883163, at *1 (N.D. Miss. Oct. 8, 2015) (collectively, "*Grim I*"), *rev'd*, ___ F.3d ___ (5th Cir. 2016). The magistrate judge then discussed the reasoning on which the Supreme Court of

---

[3] Grim filed an earlier petition that he voluntarily dismissed without prejudice.

No. 15-60720

Mississippi had relied to distinguish Grim's case from *Bullcoming*.

Turning to the determination of clearly established law, the magistrate judge framed the question as being "whether clearly established federal law forbids introducing a forensic lab report into evidence through the testimony of an analyst who reviewed the raw data and report, but neither observed nor performed any of the underlying analyses." *Id.* at *9. After discussing *Bullcoming*, the magistrate judge considered the "contrary to" provision of § 2254(d). He concluded that "[w]hen the prosecution introduces a forensic laboratory report into evidence, *Bullcoming* clearly establishes that the criminal defendant has a right to confront the analyst who performed the underlying analyses." *Id.* at *11. The magistrate judge concluded that the decision of the Supreme Court of Mississippi was "contrary to" clearly established federal law because that court held that Grim's right of confrontation was satisfied on the basis that Frazure had intimate knowledge about the underlying analysis and the report prepared by the analyst who performed the analysis, but *Bullcoming* requires more than mere familiarity with the underlying analyses and laboratory procedures. The magistrate judge did not reach the "unreasonable application" provision of § 2254(d) because he had already concluded that the Supreme Court of Mississippi failed to identify the correct legal principle.[4]

The district judge conducted *de novo* review and adopted the magistrate judge's report and recommendation. Her order focused primarily on

---

[4] The magistrate judge then concluded that Grim's claim was not procedurally barred and that the error in admitting Frazure's testimony was not harmless.

No. 15-60720

respondents-appellants' two objections to the report and recommendation. But in overruling the objection that *Bullcoming* did not clearly establish federal law as to the amount of involvement required by the testifying witness, the district judge held that, as the report and recommendation recognized, *Bullcoming* "'clearly establishes that the criminal defendant has a right to confront the analyst who performed the underlying analyses.'" *Grim I*, 2015 WL 5883163, at *1 (quoting magistrate judge report and recommendation). The district judge granted the petition for a writ of habeas corpus and ordered the State of Mississippi to commence a new prosecution and/or trial of Grim within 120 days; otherwise, he was to be released.

Respondents-appellants appeal, contending that the decision of the Supreme Court of Mississippi is neither contrary to, nor an unreasonable application of, clearly established federal law. A panel of this court granted their motion for a stay pending appeal and ordered expedited briefing and oral argument.

II

The question whether Grim is entitled to habeas relief is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

> Under AEDPA, a federal court may not issue a writ of habeas corpus for a state conviction unless the adjudication of the claim:
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based

11

No. 15-60720

> on an unreasonable determination of the
> facts in light of the evidence presented in
> the State court proceedings.

*Young v. Stephens*, 795 F.3d 484, 489 (5th Cir. 2015) (quoting 28 U.S.C. §
2254(d)) (denying certificate of appealability), *petition for cert. filed*, ___
U.S.L.W. ___ (U.S. Dec. 9, 2015) (No. 15-7349).

> Analyzing § (d)(1), a state court's decision is contrary
> to clearly established federal law if: (1) the state court
> applies a rule that contradicts the governing law
> announced in Supreme Court cases, or (2) the state
> court decides a case differently than the Supreme
> Court did on a set of materially indistinguishable
> facts. Similarly, § (d)(2) requires that we accord the
> state trial court substantial deference.  If reasonable
> minds reviewing the record might disagree about the
> finding in question, on habeas review that does not
> suffice to supersede the trial court's determination.

*Id.* at 489-90 (citations, internal quotation marks, brackets, and ellipsis
omitted).[5]  "Section 2254(d) sets forth a 'highly deferential standard for
evaluating state-court rulings, which demands that state-court decisions be
given the benefit of the doubt.'"  *Miller v. Thaler*, 714 F.3d 897, 901 (5th Cir.
2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)) (citation and
some internal quotation marks omitted).  As the Supreme Court reemphasized
this Term: "[t]his Court, time and again, has instructed that AEDPA, by
setting forth necessary predicates before state-court judgments may be set

---

[5] Section 2254(d)(2) is not implicated here.

No. 15-60720

aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White v. Wheeler*, ___ U.S. ___, 136 S.Ct. 456, 460 (2015) (per curiam) (quoting *Burt v. Titlow*, 571 U.S. ___, 134 S.Ct. 10, 16 (2013)). "Under § 2254(d)(1), a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *White v. Woodall*, 572 U.S. ___, 134 S.Ct. 1697, 1702 (2014)) (internal quotation marks omitted). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

In this appeal from a judgment granting habeas relief, "[w]e review the district court's conclusions of law de novo and findings of fact for clear error." *Young*, 795 F.3d at 490 (citing *Thompson v. Cain,* 161 F.3d 802, 805 (5th Cir. 1998)). When examining mixed questions of law and fact, we adhere to a de novo standard under which we independently apply the law to the facts found by the district court, as long as the district court's factual findings are not clearly erroneous. *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008) (citing *Barrientes v. Johnson*, 221 F.3d 741, 750 (5th Cir. 2000)). The question whether a defendant's Confrontation Clause rights were violated is a mixed question of law and fact. *Id.* (citing *Horn v. Quarterman*, 508 F.3d 306, 312 (5th Cir. 2007)).

13

No. 15-60720

III

AEDPA "requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the state conviction became final." *Williams v. Taylor*, 529 U.S. 362, 380 (2000). Thus our first task—and, as it turns out, our last—is to decide what constitutes "clearly established federal law" in the context of this Confrontation Clause case. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)) ("As a threshold matter here, we first decide what constitutes 'clearly established Federal law.'"); *see also Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004) ("We begin by determining the relevant clearly established law."); *Chester v. Thaler*, 666 F.3d 340, 345 (5th Cir. 2011) (citation omitted) ("The first step in determining whether a state court unreasonably applied clearly established federal law is to identify the Supreme Court holding that the state court supposedly unreasonably applied.").

A

Under § 2254(d)(1), clearly established law refers to "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72 (citing *Williams*, 529 U.S. at 405, 413). It includes only the "holdings, as opposed to the dicta," of these Supreme Court opinions. *Williams*, 529 U.S. at 412. When determining what is clearly established federal law, we are not permitted to frame Supreme Court precedents at a high level of generality; otherwise, we "could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'" *Nevada v.*

14

No. 15-60720

*Jackson*, ___ U.S. ___, 133 S.Ct. 1990, 1994 (2013) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)).

B

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause bars the admission of "testimonial statements" made by a non-testifying witness, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him.  *Id.* at 59.

In *Melendez-Diaz*, 557 U.S. 305, the Court concluded that an analyst's sworn certificates—offered by the prosecution to prove that the results of forensic analysis showed that the seized substances were cocaine, and created specifically to serve as evidence in a criminal proceeding—were "testimonial," and that "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be 'confronted with' the analysts at trial."  *Id.* at 311 (quoting *Crawford*, 541 U.S. at 54).  The Court viewed the case as involving "little more than the application of our holding in *Crawford*."  *Id.* at 329. *Melendez-Diaz* "refused to create a 'forensic evidence' exception to this rule." *Bullcoming*, 131 S.Ct. at 2713 (citing *Melendez-Diaz*, 129 S.Ct. at 2536-38).

In *Bullcoming* the "question presented [was] whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Id.* at 2710.  The defendant, Donald Bullcoming ("Bullcoming"), was charged

15

with driving while under the influence of intoxicating liquor.  At his trial, the prosecution introduced the Report of Blood Alcohol Analysis ("BAC report") of the New Mexico Department of Health, Scientific Laboratory Division ("SLD"). Curtis Caylor ("Caylor"), an SLD forensic analyst, had analyzed Bullcoming's blood sample.  Caylor completed and signed the "certificate of analyst" portion of the report, certifying that: the blood alcohol content ("BAC") in Bullcoming's sample was 0.21 grams per hundred milliliters, an inordinately high level; he had received the blood sample intact, and the seal was broken in the laboratory; his statements in the report were correct; and he had followed the procedures set out on the reverse of the report, including that he had noted any circumstances or conditions that might affect the integrity of the sample or otherwise affect the validity of the analysis.  *Id.* at 2710-11.  Caylor had been placed on unpaid leave, and the prosecution did not call him to testify at trial. Instead, Gerasimos Razatos ("Razatos"), an SLD scientist "who had neither observed nor reviewed Caylor's analysis," was allowed to testify in his place. *Id.* at 2712.   The prosecution proposed to introduce Caylor's finding as a business record during Razatos' testimony.

The *Bullcoming* Court held that the BAC report was testimonial, *id.* at 2717, and that Razatos' testimony did not satisfy the Confrontation Clause, *id.* at 2716 ("In short, when the State elected to introduce Caylor's certification, Caylor became a witness Bullcoming had the right to confront.").  The Court began by discussing its decisions in *Crawford* and *Melendez-Diaz*, noting that the State never asserted that Caylor, the analyst who signed the certification, was unavailable, that the record showed only that Caylor was placed on unpaid

No. 15-60720

leave for an undisclosed reason, and that Bullcoming did not have an opportunity to cross-examine Caylor.  The Court concluded that *Crawford* and *Melendez-Diaz* weighed heavily in Bullcoming's favor.  It then addressed why Razatos' appearance did not meet the Confrontation Clause requirement and why the State was mistaken in arguing that the BAC report was non-testimonial and therefore not subject to the Confrontation Clause.

The Court rejected the holding of the New Mexico Supreme Court that Razatos could testify in place of Caylor because Caylor was simply transcribing the result generated by the gas chromatograph machine, that he was presenting no interpretation and exercising no independent judgment, and that his role was that of a mere scrivener.  The Court explained that Caylor's certification involved more specific representations about Bullcoming's blood sample than a machine-generated number, and that "[t]hese representations, relating to past events and human actions not revealed in raw, machine-produced data, are meet for cross-examination." *Id.* at 2714.

The Court then posed and rejected a hypothetical that illustrated the red flags raised by the potential ramifications of the New Mexico Supreme Court's reasoning.  The Court disagreed with the premise that the prosecution could call in place of a police officer who had recorded an objective fact—such as an observation of a factual condition or event—an officer other than the one who made the observation, provided that the testifying officer was equipped to testify about any technology that the observing officer deployed and the police department's standard operating procedures.

The Court next declined to credit the New Mexico Supreme Court's

17

statement that the number registered by the gas chromatograph machine did not call for Caylor to interpret or exercise independent judgment. And it reiterated that the comparative reliability of an analyst's testimonial report drawn from machine-produced data did not overcome the Sixth Amendment bar, considering that *Crawford* had settled that the obvious reliability of a testimonial statement did not dispense with the Confrontation Clause.

The Court also rejected the New Mexico Supreme Court's belief that Razatos could substitute for Caylor on the basis that Razatos qualified as an expert witness with respect to the gas chromatograph machine and the SLD's laboratory procedures. This was because Razatos' surrogate testimony could not convey what Caylor knew or observed about the events his certification concerned, such as the particular test and testing process he employed, nor could Razatos' testimony expose any lapses or lies on the certifying analyst's part. Significantly, Razatos had no knowledge of the reason why Caylor had been placed on unpaid leave, thus precluding Bullcoming's counsel from questioning Caylor about whether he was placed on unpaid leave due to incompetence, evasiveness, or dishonesty. "Nor did the State assert that Razatos had any 'independent opinion' concerning Bullcoming's BAC." *Id.* at 2716. More fundamentally, the Confrontation Clause "does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination." *Id.*

The Court also rejected the State's contention that the SLD's blood-alcohol analysis reports were non-testimonial, concluding that *Melendez-Diaz*

18

No. 15-60720

"left no room for that argument." *Id.*; *id.* at 2717 ("In all material respects, the laboratory report in this case resembles those in *Melendez-Diaz.*"); *id.* ("In sum, the formalities attending the 'report of blood alcohol analysis' are more than adequate to qualify Caylor's assertions as testimonial."). The Court agreed with the New Mexico Supreme Court, which had held that Caylor's report was testimonial.

C

In *Bullcoming* the Court did not clearly establish the categorical rule that the district court effectively recognized in this case: that when the prosecution introduces a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—the *only* witness whose in-court testimony can satisfy the Confrontation Clause is the analyst who performed the underlying analyses contained in the report.

First, this interpretation of *Bullcoming* requires that we ignore the question presented in *Bullcoming*. The Court stated that

> [t]he question presented is whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification.

*Bullcoming*, 131 S.Ct. at 2710.

> We granted certiorari to address this question: Does the Confrontation Clause permit the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact

19

No. 15-60720

> at a criminal trial, through the in-court testimony of
> an analyst who did not sign the certification or
> personally perform or observe the performance of the
> test reported in the certification.

*Id.* at 2713.  Neither formulation limits the question presented to whether the *only* scientist or analyst who can testify is the scientist or analyst who performed the underlying analyses.

Second, at most, the holding of *Bullcoming* clearly establishes that, when one scientist or analyst performs a test reported in a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—and the prosecution introduces the report and certification to prove that particular fact, the Confrontation Clause forbids the prosecution from proving that particular fact through the in-court testimony of a scientist or analyst who neither signed the certification nor performed or observed the test reported in the certification.  *Bullcoming* does not clearly establish what degree of involvement with the forensic testing, beyond what was present in *Bullcoming*, is required of a testifying witness.  In other words, at most, *Bullcoming* holds that if scientist A performed the test, the prosecution cannot prove a particular fact contained in scientist A's testimonial certification by offering the in-court testimony of scientist B, if scientist B neither signed the certification nor performed or observed the test.  But *Bullcoming* does not hold that scientist B cannot testify even if he has a sufficient degree of involvement with the forensic testing.

This limitation on *Bullcoming*'s reach is illustrated by the facts of the

20

case. Caylor was the forensic analyst who analyzed Bullcoming's blood sample and completed and signed the "certificate of analyst" portion of the report, certifying to the BAC in the sample.  Razatos had no role in performing the testing that analyzed the BAC, or observing or reviewing Caylor's analysis, or signing the certification.  Razatos was only able to testify about the testing device used to analyze Bullcoming's blood and the laboratory's testing procedures.  Razatos' testimony violated the Confrontation Clause because the prosecution sought to introduce a forensic laboratory report containing Caylor's testimonial certification—made in order to prove a fact (Bullcoming's BAC)—through the in-court testimony of Razatos, an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification.

Third, Justice Sotomayor's concurring opinion in *Bullcoming* reinforces our reading of what (at most) the decision clearly establishes as federal law.[6] Justice Sotomayor joined the majority opinion, providing the decisive fifth vote. She also concurred in part, writing separately for two reasons, one of which was "to emphasize the limited reach of the Court's opinion." *Bullcoming*, 131

---

[6] We do not suggest that Justice Sotomayor's concurring opinion is clearly established law.  *See Williams*, 529 U.S. at 412 (stating that clearly established law "refers to the holdings, as opposed to the dicta," of the Supreme Court); *Jackson v. Coalter*, 337 F.3d 74, 84 & n.6 (1st Cir. 2003) (explaining that *Williams*' rule regarding holdings, as opposed to dicta, "excludes concurring and dissenting opinions of individual Justices as well as decisions of the courts of appeals," but "add[ing] that authorities of this kind occasionally may offer insight into a section 2254(d)(1) determination").  Justice Sotomayor's concurring opinion offers insights into her view of the majority's holding in *Bullcoming* and provides support for our conclusion that *Bullcoming* does not clearly establish what degree of involvement with the forensic testing, beyond what was present in *Bullcoming*, is required of a testifying witness.

No. 15-60720

S.Ct. at 2719 (Sotomayor, J., concurring in part).  She specifically identified Confrontation Clause questions that in her view remained unanswered by the Court's holding.  *Id.* at 2721-22.  For example, in addressing "some of the factual circumstances that this case does *not* present," *id.* at 2721-22, she explained:

> this is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue. Razatos conceded on cross-examination that he played no role in producing the BAC report and did not observe any portion of Curtis Caylor's conduct of the testing. The court below also recognized Razatos' total lack of connection to the test at issue.  It would be a different case if, for example, a supervisor who observed an analyst conducting a test testified about the results or a report about such results. We need not address what degree of involvement is sufficient because here Razatos had no involvement whatsoever in the relevant test and report.

*Id.* at 2722 (citations omitted).

Moreover, in his concurrence in *Williams v. Illinois*, ___ U.S. ___, 132 S.Ct. 2221 (2012), Justice Breyer acknowledged that neither *Melendez-Diaz* nor *Bullcoming* fully answers the "question as to how, after *Crawford*, Confrontation Clause 'testimonial statement' requirements apply to crime laboratory reports."  *Id.* at 2248 (Breyer, J., concurring).  He pointedly questioned, "What is to happen if the medical examiner dies before trial?  Is the Confrontation Clause effectively to function as a statute of limitations for murder?"  *Id.* at 2251 (citations and internal quotation marks omitted).

22

No. 15-60720

Fourth, Justices of the Supreme Court are not alone in expressing uncertainty about what degree of involvement in the underlying forensic testing and analysis is required of an in-court witness after *Bullcoming*. A panel of this court stated in *dicta* in an unpublished opinion that, "even after *Bullcoming*, it is not clear whether the testimony of the analyst in this case—who supervised and worked in the same lab as the analyst who did the actual testing—would violate the Confrontation Clause." *United States v. Johnson*, 558 Fed. Appx. 450, 453 (5th Cir.) (per curiam) (addressing motion for certificate of appealability in § 2255 habeas petition asserting ineffective assistance of counsel), *cert. denied*, ___ U.S. ___, 135 S.Ct. 278 (2014).

In *Flournoy v. Small*, 681 F.3d 1000 (9th Cir. 2012), the Ninth Circuit considered, *inter alia*, whether the defendant's right of confrontation was violated when the trial court permitted a forensic analyst to testify based on the results of scientific tests performed and reports prepared by other analysts. *Id.* at 1001. Similar to Grim's case, the testifying expert "performed a technical review of all of [the primary analyst's] work" and confirmed that the primary analyst "had followed all proper protocols and procedures for the testing and calculations." *Id.* at 1002. The court held that there was no clearly established federal law at the time the defendant's conviction became final on direct appeal "that held such testimony to violate the Confrontation Clause in circumstances where the testifying witness participated in and reviewed the crime lab's work, even though she did not personally conduct all the testing herself." *Id.* at 1001-02. Although the defendant's case became final on direct appeal before *Bullcoming* was decided, the court stated in *dicta* that *Bullcoming* supported

23

its conclusion. *Id.* at 1005. It reasoned that *Bullcoming* left certain issues unresolved, such as "the degree of proximity the testifying witness must have to the scientific test," and that "[i]f those areas remained unsolved as of 2011, it is impossible to conclude that the California court's conclusions in this case were contrary to clearly established federal law at the time." *Id.*; *see also United States v. James*, 712 F.3d 79, 102 (2d Cir. 2013) (quoting *Williams*, 132 S.Ct. at 2246 (Breyer, J., concurring)) ("As Justice Breyer pointed out in *Williams*, it is still unsettled under the Court's recent Confrontation Clause jurisprudence whether there is a 'logical stopping place between requiring the prosecution to call as a witness one of the laboratory experts who worked on the matter and requiring the prosecution to call *all* of the laboratory experts who did so.'"); *United States v. Sweeney*, 70 M.J. 296, 311 n.13 (C.A.A.F. 2011) ("[I]t is not clear after *Bullcoming* whether or not the testimony of [this witness] as a lab supervisor is adequate under *Crawford* to satisfy the confrontation clause with respect to the underlying tests and materials.").

Widespread disagreement among courts regarding *Bullcoming* further supports the conclusion that the Supreme Court has not clearly established what degree of involvement with the forensic testing is required of an in-court witness offered to prove a particular fact in a testimonial certification, beyond what was deemed insufficient in *Bullcoming*. *See, e.g., Carey v. Musladin*, 549 U.S. 70, 76 (2006) (concluding that the fact that "lower courts have diverged widely" on the question presented "[r]eflect[s] the lack of guidance from this Court" and supports a finding of no clearly established law); *compare United States v. Ignasiak*, 667 F.3d 1217, 1231 (11th Cir. 2012) (concluding admission

No. 15-60720

into evidence of autopsy reports through testimony of medical examiner who "did not personally observe or participate in those autopsies" violated Confrontation Clause) *with United States v. Summers*, 666 F.3d 192, 202-03 (4th Cir. 2011) (concluding that supervisor's testimony about his report that was based on data produced by other analysts did not violate Confrontation Clause).

D

Grim's entitlement to habeas relief depends on a showing that the prosecution cannot introduce a forensic laboratory report containing a testimonial certification by one analyst—made for the purpose of proving a particular fact (here, that the tested substance was cocaine)—through the in-court testimony of a technical reviewer, even though the technical reviewer was more involved in the test and report than was the witness in *Bullcoming*. In the present case, Frazure examined the analyst's report and all of the data, including everything the analyst did to the item of evidence; ensured that the analyst did the proper tests and that the analyst's interpretation of the test results was correct; ensured that the results coincided with the conclusion in the report; agreed with a reasonable degree of scientific certainty with the examinations and results of the report; and signed the report. Grim cannot make this showing because *Bullcoming* does not address this issue, i.e., it does not address the degree of involvement that Frazure had.[7] Because *Bullcoming*

_____

[7] *See, e.g., Wright v. Van Patten*, 552 U.S. 120, 125 (2008) (per curiam) ("No decision of this Court, however, squarely addresses the issue in this case[.] . . . Our precedents do not clearly hold that counsel's participation by speakerphone should be treated as a 'complete denial of counsel,' on par with total absence."); *Musladin*, 549 U.S. at 75-76 (explaining that

No. 15-60720

does not clearly establish this as federal law, the decision of the Supreme Court of Mississippi could not have been contrary to, or an unreasonable application of, clearly established federal law.[8]  "Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized."  *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam).

\* \* \*

Accordingly, because *Bullcoming* does not clearly establish that, when the prosecution introduces a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—the prosecution cannot do so through the in-court testimony of a technical reviewer who signed the report and was more involved in the testing and report preparation than was the witness in *Bullcoming*, we REVERSE the judgment of the district court and RENDER judgment denying the petition for a writ of

---

Supreme Court cases have addressed defendants' fair-trial rights in the context of state-sponsored courtroom practices, but not in the context of "the spectator conduct to which Musladin objects"); *Buntion v. Quarterman*, 524 F.3d 664, 674-75 (5th Cir. 2008) ("Supreme Court case law does not clearly establish bias in a situation such as the one presently before this court.").

[8] *See Wright*, 552 U.S. at 126 (quoting *Musladin*, 549 U.S. at 77) (some internal quotation marks omitted) ("Because our cases give no clear answer to the question presented, . . . 'it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.'"); *Wood v. Quarterman*, 491 F.3d 196, 202 (5th Cir. 2007) (citation omitted) ("Because no decision of the Supreme Court obligates state courts to permit self-representation when the defendant fails to invoke his *Faretta* right in a timely manner, we are compelled to find that the state habeas court's holding that Wood was not entitled to relief because his motion was untimely was neither contrary to, nor an unreasonable application of, federal law."); *see also Gomez v. Thaler*, 526 Fed. Appx. 355, 359-60 (5th Cir. 2013) (per curiam) (concluding, *inter alia*, that because no Supreme Court precedent had directly addressed issue presented, it could not be said that state court unreasonably applied clearly established federal law).

No. 15-60720

habeas corpus.