MAXWELL, JUSTICE,
SPECIALLY CONCURRING:
¶ 78. The majority is correct that Dr. Barnhart did not violate Christian’s Sixth Amendment right to confront his accuser.[6] But I write separately to address Christian’s very specific Bullcoming-based Confrontation Clause argument. Christian clearly raised this precise argument. And this is an issue the resolution of which is important to our circuit judges and criminal practitioners who face this claim frequently.
¶79. Relying on Bullcoming v. New Mexico, 564 U.S. 647, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), Christian asserts that, because Dr. Barnhart did not personally conduct Carter’s and Marks’s autopsies, she cannot testify about their causes of death. This notion is incorrect and stretches Bullcoming’s “limited reach” too far. Id., 564 U.S. at 668, 131 S.Ct. at 2719 (Sotomayor, J., concurring). Bullcoming does not restrict testimony by a pathologist who was personally involved in creating the autopsy report, albeit in a more limited fashion than performing the autopsy. Nor does it categorically prohibit an expert pathologist from giving her independent opinion about the cause of death because she did not perform the autopsy.
I. Sufficient Involvement with the Process
¶ 80. Among the issues Bullcoming left unresolved was “the degree of proximity the testifying witness must have to the scientific test.’ ” Grim v. Fisher, 816 F.3d 296, 309 (5th Cir. 2016) (quoting Flournoy v. Small, 681 F.3d 1000 (9th Cir. 2012)); see Bullcoming, 564 U.S. at 668, 131 S.Ct. at 2722 (Sotomayor, J., concurring) (noting “this is not a case in which the person testifying [was] a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue”). This is why our Court’s pre-Orow-ford[7] and pre-Bullcoming test for the sufficient degree of involvement to satisfy the Confrontation Clause is still good law. See Grim v. Fisher, 816 F.3d at 310 (finding no federal-law violation of this Court’s application of its degree-of-involvement test).
1181. In McGowen v. State, we held that “when the testifying witness is a court-accepted expert in the relevant field who participated in the analysis in some capacity, such as by performing procedural *1224 checks, then the testifying witness’s testimony does not violate a defendant’s Sixth Amendment rights.” McGowen v. State, 859 So.2d 320, 339 (Miss. 2003) (emphasis added). From this principle evolved a two-part test—“First, we ask whether the witness has ‘intimate knowledge’ of the particular report, even if the witness was not the primary analyst or did not perform the analysis firsthand. Second, we ask whether the witness was ‘actively involved in the production’ of the report at issue.” Grim v. State, 102 So.3d 1073, 1079 (Miss. 2012) (quoting Conners v. State, 92 So.3d 676, 690 (Miss. 2012)).
¶82. We applied this test in Grim to hold that a laboratory supervisor—who was “not involved in the actual testing” of the substance seized from a defendant but “had reviewed the report for accuracy and signed the report as the ‘case technical reviewer’ ”—was “sufficiently involved with the analysis and overall process” to testify the substance was cocaine without violating the Confrontation Clause. Id. at 1081.
¶83. After we affirmed his conviction, Grim filed for federal habeas corpus relief. A district judge in the Northern District of Mississippi granted Grim relief, holding that Bullcoming clearly establishes that, when a laboratory report is introduced into evidence, the defendant has a right to confront the analyst who performed the underlying analysis. Grim v. Fisher, 816 F.3d at 298 (discussing district court’s decision in Grim v. Epps, 2015 WL 5883163 (N.D. Miss. Oct. 8, 2015)). Christian cites this district-court case as proof that this Court has been wrong in its analysis of Bullcoming.
¶ 84. But the Fifth Circuit recently said it was the district court that was wrong and reversed it. Id. at 299. In doing so, the Fifth Circuit held the exact opposite. It instead found that Bullcoming “did not clearly establish the categorical rule ... that when the prosecution introduces a forensic laboratory report containing a testimonial certification ... the only witness whose in-court testimony can satisfy the Confrontation Clause is the analyst who performed the underlying analyses contained in the report.” Grim v. Fisher, 816 F.3d at 307 (emphasis added). And in the absence of a clear rule, this Court’s holding that the supervisor’s testimony did not violate Grim’s right to confrontation did not run afoul of federal law. Id. at 310.
¶85. So, contrary to Christian’s argument, this Court’s Bullcoming analysis has not been rejected. And this analysis leaves open the possibility that someone other than the pathologist that performed the underlying autopsy may testify about the autopsy report if he or she was sufficiently involved with the analysis and overall process.
¶ 86. But as Dr. Shaker’s autopsy report was not introduced into evidence here, I agree with the majority that the particular sufficient-involvement analysis we performed in Grim is not necessary.
II. Independent Expert Testimony
¶ 87. Despite Dr. Shaker’s report and notes not being introduced into evidence, Christian still insists that Dr. Barnhart’s testimony violated Bullcoming. According to Christian, Dr. Barnhart could not testify about the causes of death because she did not perform the autopsies herself.
. ¶ 88. But Bullcoming was “not a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence.” Id., 564 U.S. at 673, 131 S.Ct. at 2722 (Sotomayor, J., concurring) (emphasis added). Instead, Bull-coming specifically concerned “surrogate testimony”—i.e., the prosecution’s introduction of a forensic report containing a testimonial certification through the in- *1225 court testimony of a forensic analyst “who did not sign the certification or perform or observe the test reported in the certification.” Id., 564 U.S. at 651, 131 S.Ct. at 2710. In his separate opinion, Justice Kitchens assumes Dr. Barnhart was called to be a surrogate witness. But Dr. Barn-hart was no surrogate. She was called as an expert witness to give her independent opinion about the cause of Carter’s and Marks’s deaths. See Commonwealth v. Brown, 139 A.3d 208, 217-19 (Pa. Super. Ct. 2016) (holding medical examiner’s independent conclusions regarding the cause ofydeath were admissible); see also State v. Gonzales, 274 P.3d 151, 158-59 (N.M. Ct. App. 2012) (finding no per se Confrontation Clause violation by allowing one expert pathologist to testify based on information gathered in an autopsy performed by another pathologist). Thus, it is obvious Bullcoming’s surrogate-testimony prohibition was not violated here, since Dr. Barnhart did not testify from the autopsy report but instead gave her independent expert opinion about the cause of death.
WALLER, C.J., RANDOLPH, P.J., LAMAR, COLEMAN AND BEAM, JJ., JOIN THIS OPINION.

. U.S. Const, amend. VI.

. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).